JS - 6

O

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| JIMMY J. ELLIOTT and JEANETTE BARTON, on behalf of themselves and all others similarly situated, <br><br>        Plaintiffs, <br><br>        v. <br><br> MITSUBISHI CEMENT CORPORATION, a Nevada Corporation; SPECIALTY MINERALS MICHIGAN, INC., a Michigan Corporation; GRESHAM, SAVAGE, NOLAN & TILDEN; ROBERT W. RITTER, JR.; M. WILLIAM TILDEN; KEITH HIGGINS; THE HEGNER LAW FIRM, DOES 1-10, <br><br>        Defendants. | CASE NO. CV 07-03509-AG(AJWx) <br><br> ORDER GRANTING MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT BY DEFENDANTS GRESHAM SAVAGE NOLAN & TILDEN |

Before the Court is a Motion to Dismiss Plaintiffs' Third Amended Complaint for Failure to State a Claim for Which Relief can be Granted filed by Defendant Gresham Savage Nolan & Tilden, APC ("Gresham Firm"), Defendant Robert W. Ritter ("Ritter"), and Defendant M. William Tilden ("Tilden") (collectively "Defendants").  After reviewing the moving, opposition, and reply papers, the Court GRANTS Defendants' motion without leave to amend.  Also before

1  the Court is Defendants' Motion to Strike Portions of Plaintiffs' Third Amended Complaint.

2  Because the Court has granted the motion to dismiss, the Motion to Strike is moot.  Therefore, the

3  Court has not considered the Motion to Strike, and the hearing on that motion is VACATED.

4

5  **<u>BACKGROUND</u>**

6

7       The Court recited the factual allegations in this case in its orders granting the motions to

8  dismiss the First and Second Amended Complaints.  The court largely repeats those recitations of

9  the facts here.

10       According to the Third Amended Complaint ("Complaint"), this case arises from the

11  defendants' roles in a sale of property in which Plaintiffs Jimmy J. Elliott and Jeanette

12  Barton ("Plaintiffs") held an interest.  Plaintiffs were beneficiaries of the Retirees Benefit Trust

13  ("RBT"), which is a benefit plan provided by Plaintiffs' employer under the Employee

14  Retirement Income Security Act ("ERISA").  RBT, in turn, was a beneficiary of the Cushenbury

15  Mine Trust ("Trust"), which held the real property in dispute.  (Complaint ¶ 3.)

16       Plaintiffs allege that the Gresham Defendants acted as the Trust's lawyers from the time of

17  its inception in or about 1987 until at least 2003.  (Complaint ¶ 9.)  Between 2000 and 2001, the

18  Trust entered into three agreements for the purchase and sale of Trust properties with Mitsubishi

19  Cement Corporation ("Mitsubishi").  The Third Amended Complaint alleges that the defendants

20  represented both the Trust and Mitsubishi in the negotiation and execution of these purchase and

21  sale agreements.  (*Id.* at ¶ 16.)  According to Plaintiffs, Defendants obtained a "waiver" of the

22  actual conflict of interest between the Trust and Mitsubishi for the first purchase and sale

23  agreement, but the waiver was only signed by one CMT trustee and failed to fully disclose the

24  "nature, extent, or consequences of the conflict."  (*Id.* at ¶ 17.)  Waivers allegedly were not

25  obtained for the second and third purchase and sale agreements.  (*Id.* at ¶ 18.)  Plaintiffs allege

26  that throughout these negotiations, Defendants exploited their relationship with the Trust to

27  achieve more favorable results for Mitsubishi.  According to Plaintiffs, all three properties were

28  sold considerably below market value on terms much more favorable to Mitsubishi.  (*Id.* at ¶ 35.)

Plaintiffs' Third Amended Complaint further alleges that after the purchase and sale agreements were completed in 2001, Defendants continued to represent the Trust in negotiations with various agencies regarding the implementation of the Carbonate Habitat Management Strategy in several Trust properties, including the properties sold to Mitsubishi. (*Id.* at ¶ 21.) According to Plaintiffs, the outcome of these negotiations "[had] a direct impact on the price and terms of the sales contracts regarding how much mitigation lands the CMT would have to provide to [Mitsubishi]." (*Id.* at ¶ 21.)

Based on these facts, Plaintiffs claim that the Gresham Defendants have engaged in legal malpractice and violations of fiduciary duties under ERISA. Plaintiffs seek damages or rescission of the related sales contracts, treble or punitive damages, costs, and attorney fees.

Defendants argue, among other things, that: (1) all relevant statutes of limitation have run; (2) Defendants are not ERISA fiduciaries; (3) Plaintiffs' claims are barred by claim preclusion; and (4) Plaintiffs are not real parties and interest and therefore have no standing to sue.

**LEGAL STANDARD**

Under Rule 12(b)(6), dismissal for failure to state a claim upon which relief can be granted is permitted when there is a "lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"When a motion to dismiss is based on the running of the statute of limitation, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (quoted in *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993)). "The sole issue is whether the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the *potential* applicability of the . . . tolling doctrine." *Cervantes*, 5 F.3d at 1277 (emphasis in original).

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353

1  F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v.*

2  *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th

3  Cir. 1991).

4

5  **ANALYSIS**

6

7  Over Plaintiffs' opposition, Defendants have requested that the Court take judicial notice of

8  certain documents in support of Defendants' motion to dismiss.  Because the opinion below does

9  not rely on these documents, the Court does not consider Defendants' request.

10

11  **1.   PLAINTIFFS' CLAIMS ARE TIME-BARRED.**

12

13  Defendants have moved to dismiss Plaintiffs' First and Second Claims for Relief, arguing

14  that both are time-barred by the relevant statutes of limitations.

15

16  **1.1   Second Claim for Legal Malpractice**

17

18  The statute of limitations for Plaintiffs' legal malpractice claim is provided by California

19  Code of Civil Procedure § 340.6 ("§ 340.6").  That section provides:

20  An action against an attorney for a wrongful act or omission, other than for

21  actual fraud, arising in the performance of professional services shall be

22  commenced within one year after the plaintiff discovers, or through the use of

23  reasonable diligence should have discovered, the facts constituting the

24  wrongful act or omission, or four years from the date of the wrongful act or

25  omission, whichever occurs first.

26  Defendants argue that Plaintiffs have exceeded both the one-year and four-year limitations.  The

27  Court agrees.

28  If, as Plaintiffs allege, Defendants continued to represent both the Trust and Mitsubishi

during negotiations of all three land sale agreements, the wrongful act of legal malpractice began at the time Defendants chose to represent both sides and was completed on June 29, 2001, when the last of the land sale contracts was signed.  Through reasonable diligence, Plaintiffs should have discovered the unfavorable nature of the contracts at the time they were executed.  Plaintiffs' original complaint was not filed until May 30, 2007, more than one year after the alleged malpractice should have been discovered and more than four years after the wrongful act occurred.  The action for legal malpractice thus appears to be time-barred.  Plaintiffs argue, however, that the statute of limitations should be tolled under two exceptions to § 340.6.

The first exception allows the statute of limitations to be tolled while "the plaintiff has not sustained actual injury."  § 340.6(a)(1).  Under this exception, "actual injury" occurs "when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions."  *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*, 18 Cal.4th 739, 743; 76 Cal.Rptr.2d 749, 752 (1998).  Plaintiffs argue that the Trust did not suffer any actual injury until the unfavorable settlement of litigation related to the contracts in 2007.  Thus, according to Plaintiffs, the limitation should be tolled until 2007.  This argument makes little sense.  Plaintiffs suffered an actual injury at the time the unfavorable, "one-sided" contracts were made.  The Third Amended Complaint actually details the injuries suffered, claiming that "[a]s a legal cause of Defendants' negligent representation . . . the CMT lost millions of dollars in assets and profits pursuant to the sale to MCC." (Complaint ¶ 50.) Clearly, when the properties were sold to Mitsubishi at below-market value in 2001, Plaintiffs immediately suffered a loss attributable to Defendants' alleged malpractice.  The statute of limitations in this case cannot be tolled under the "actual injury" exception to § 340.6.

The second exception to 340.6 allows the statutory time period to be tolled where "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."  § 340.6(2). Plaintiffs allege that the Trust and the Gresham Defendants were engaged in an "ongoing and continuing attorney client relationship" from the mid-to-late 1990s through 2003.  Through "at least" June 2003, Defendants represented Plaintiffs in negotiations with various agencies regarding the implementation of the Carbonate

5

1  Habitat Management Strategy.  Plaintiffs argue that these implementation negotiations had a
2  "direct impact" on the "price and terms of the sales contracts regarding how much mitigation lands
3  the CMT would have to provide to the MCC."  (Complaint ¶ 21.)  According to Plaintiffs, these
4  implementation issues were "central" to the land sale contracts at issue in this case and thus part of
5  the "specific subject matter in which the alleged wrongful act or omission occurred," as required
6  by § 340.6.  The Court disagrees.

7      In applying this "continuous representation" exception, courts have interpreted "specific
8  subject matter" very narrowly.  As the court explains in *Pension Trust Fund for Operating*
9  *Engineers Local 3 v. McMorgan & Co.*, 2007 WL 201247, *9 (E.D. Cal. Jan. 24, 2007), the
10 continuous representation exception "is not triggered by the mere existence of an attorney-client
11 relationship."  Instead, "the statute's tolling language addresses a particular phase of such a
12 relationship– representation regarding a *specific subject matter*."  *Id.*  Moreover, "the limitations
13 period is not tolled when an attorney's subsequent role is only tangentially related to the legal
14 representation the attorney provided to the plaintiff."  *Id.*  In *Pension Trust*, a case similar to this
15 one, the court defined the specific subject matter at issue as the "sale of the properties in 2004 for
16 less than their market value."  *Id.*  Plaintiffs in this case point out that the 2003 negotiations
17 concerned the properties sold to Mitsubishi and ultimately determined how much mitigation lands
18 the Trust would have to provide to Mitsubishi pursuant to the sales.  The subject matter of the
19 2003 negotiations, Plaintiffs assert, "has always been, and continues to remain, the CMT
20 properties and corresponding mitigation lands."  Certainly, the Defendants' 2003 negotiations are
21 *related* to the 2001 land sales, but they are not of the same specific subject matter.  Under *Pension*
22 *Trust* and other cases, the "specific subject matter" is simply the land sales to Mitsubishi.  Once
23 the sales were completed in June 2001, Defendants were no longer representing Plaintiffs in the
24 specific subject matter at issue.  The statute of limitations thus cannot be tolled under the
25 "continuous representation" doctrine.

26     Plaintiffs have failed to show that either tolling doctrine should be applied in this case;
27 accordingly, the legal malpractice claim is time-barred.  Defendants' Motion to Dismiss the
28 Second Claim for Relief for Legal Malpractice is GRANTED without leave to amend.

**1.2     First Claim for Breach of ERISA Fiduciary Duties**

Defendants argue that the statute of limitations at § 340.6 also serves to bar Plaintiffs' claim for breach of ERISA fiduciary duties.  Plaintiffs respond that the applicable statute of limitations is not § 340.6, but instead is the statue of limitations under ERISA for breach of fiduciary duty claims.  Section 413 of ERISA provides:

> No action may be commenced under this subchapter with respect to a
> fiduciary's breach of any responsibility, duty, or obligation under this part, or
> with respect to a violation of this part, after the earlier of –
> (1) six years after (A) the date of the last action which constituted a part of the
> breach or violation, or (B) in the case of an omission the latest date on which
> the fiduciary could have cured the breach or violation, or (2) three years after
> the earliest date on which the plaintiff had actual knowledge of the breach or
> violation;
> except that in the case of fraud or concealment, such action may be
> commenced not later than six years after the date of discovery of such breach
> or violation.

29 U.S.C. § 1113.  Defendants argue, among other things, that the ERISA statute of limitations cannot apply because under the pleadings, the defendants are not ERISA fiduciaries.  The Court agrees.  As will be discussed at section 2, Plaintiffs have not sufficiently alleged that Defendants are ERISA-defined fiduciaries.  Thus, the claim for breach of ERISA fiduciary duties must fail.  To the extent that this claim is for common law breach of fiduciary duties, the statute of limitations under § 340.6 applies to bar the claim for the reasons discussed in section 1.1.  Accordingly, the Motion to Dismiss the First Claim for Relief is GRANTED without leave to amend.

1    **2.    PLAINTIFFS HAVE NOT SHOWN THAT DEFENDANTS WERE ERISA**

2         **FIDUCIARIES.**

3

4         Plaintiffs claim that the defendants breached their ERISA fiduciary duties to the Trust.

5    Defendants move to dismiss this claim, arguing that the Complaint does not show that Defendants

6    were in fact ERISA fiduciaries.  The Court agrees with Defendants.

7         ERISA permits suits for breach of fiduciary duty only against ERISA-defined fiduciaries.

8    *Kyle Ry., Inc. V. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 516 (9th Cir. 1993).  Attorneys and other

9    professional consultants performing their usual functions in advising ERISA plan trustees are not

10   ERISA-defined fiduciaries.  Two Ninth Circuit cases have emphasized that attorneys to trusts are

11   generally not ERISA-defined fiduciaries.  In *Yeseta v. Baima*, 837 F.2d 380, 385 (9th Cir. 1988),

12   the court held that an attorney and executor who counseled others in withdrawals from a trust and

13   who himself made the withdrawals was not an ERISA-defined fiduciary.  The Court found that his

14   control over the trust was not "in a manner other than by usual professional functions."  *Id.*  The

15   court reiterated the *Yeseta* holding in *Nieto v. Ecker*, 845 F.2d 868, 870 (9th Cir. 1988).

16        An attorney may become an ERISA-defined fiduciary, however, by exercising "control

17   respecting the management of the plan or its assets," "hav[ing] discretionary responsibility in the

18   administration of the plan," or "giv[ing] investment advice for a fee."  *Az. State Carpenters*

19   *Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 721-22 (9th Cir. 1997).  Plaintiffs fail to

20   sufficiently allege that Defendants did any of the three.

21

22

23        **2.1    Control and Discretionary Responsibility**

24

25        Plaintiffs argue that the Complaint adequately alleges that Defendants exercised control

26   over the trust "in a manner other than by usual professional functions."  *See Yeseta*, 836 F.2d at

27   385.  The Complaint generally alleges that Defendants "provided advice and controlled disposition

28   of the trust assets" and "exercised discretionary authority and control over the CMT's and RBT's

1  assets and the investment decisions regarding those assets." (Complaint ¶ 35.)  These conclusory

2  statements of law do not suffice to establish that Defendants were ERISA-defined fiduciaries;

3  Plaintiffs allege no specific facts to demonstrate that Defendants had actual control over Trust

4  assets. *See Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) ("While [plaintiff's] amended

5  complaint is replete with assertions of [defendant attorney's] 'discretionary authority, control, and

6  responsibility over the management of the Fund and certain assets of the Fund,' it nevertheless

7  lacks any specific allegations capable of demonstrating that [defendant attorney] transcended his

8  role as legal counsel.") Even read in the light most favorable to Plaintiffs, the Third Amended

9  Complaint simply does not allege sufficient facts to suggest that Defendants exercised any more

10  control over the Trust than is common among attorneys to a trust.

11

12  ### 2.2   Investment Advice

13

14  Plaintiffs also allege that Defendants "gave investment advice" that was "beyond that

15  provided by the normal attorney as it included valuing the mining property and minerals found on

16  the property." (Complaint ¶¶ 5, 35.)  Plaintiffs claim that this investment advice also included

17  "advice on whether to sell or lease land," "which parts of the property to include in any sale or

18  lease," "advice as to how to construct the investment sale as a lease or sale," "advice as to which

19  mining companies to enter contracts with and the length and scope of the contracts," and "the full

20  authority to draft the contracts to reflect the views and advice of [Defendants]." (*Id.* at ¶ 5.)

21  Defendants claim that this advice constitutes nothing more than "legal advice with a false label."

22  (Motion to Dismiss 17:20.)  The Court agrees.

23  To find that an attorney qualifies as an ERISA because she has provided "investment

24  advice," the court must find that: (1) counsel provided individualized investment advice; (2) the

25  advice was given pursuant to a mutual understanding; (3) the advice was provided on a regular

26  basis; (4) the advice pertained to the value of property or consisted of recommendations as to the

27  advisability of investing in certain property; and (5) the advice was rendered for a fee.  All five

28  factors must be present in order to support a finding of ERISA fiduciary status.  29 U.S.C. §

1  1002(21)(A) (fee); 29 C.F.R. § 2510.3-21(c)(1)(I) (value of property, advisability of investing in

2  property); 29 C.F.R. § 2510.3-21(c)(1)(ii)(B) (regular basis, mutual agreement, and individualized

3  advice).  *See Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir.

4  1994).  Plaintiffs' Third Amended Complaint fails on several counts.  The Complaint fails to

5  allege that the investment advice was "individualized" as contemplated by ERISA.  Nowhere in

6  the Complaint do Plaintiffs discuss or even allude to the individualized nature of the "investment

7  advice" provided.  The Complaint also fails to allege that the "investment advice" was given

8  pursuant to a mutual understanding or was rendered for a fee.  Plaintiffs fail to allege even the

9  existence of any mutual understanding regarding investment advice.  In their Opposition, Plaintiffs

10  themselves acknowledge that the TAC is silent on the issue of compensation.  (Opposition 20:19.)

11  Plaintiffs argue that the existence of a fee for investment advice can be inferred from the fact that

12  "through their capacity as mining and environmental attorneys for the Trusts, Defendants were

13  paid, over the fourteen year period, in such a capacity."  (*Id.* at 20:20-21.)  Therefore, Plaintiffs

14  claim, "the TAC supports the fact that Defendants were paid indirectly for their investment

15  advice."  (*Id.* at 20:21-22.)  Plaintiffs miss the point.  To qualify as ERISA fiduciaries, Defendants

16  must have been paid a fee for their *investment* advice–advice beyond that normally given by an

17  attorney to a trust.  The existence of some fee structure for the defendants' ordinary legal services

18  does not suggest that a fee was received for investment advice, as required by ERISA.  In any

19  event, the Third Amended Complaint's admitted silence on the issue of compensation is itself fatal

20  to Plaintiffs' claim that Defendants qualify as ERISA fiduciaries.

21       Plaintiffs' Third Amended Complaint utterly fails to allege sufficient facts to support a

22  finding that Defendants qualify as ERISA fiduciaries.  Their claim for breach of ERISA fiduciary

23  duties, then, must fail.

24

25  **DISPOSITION**

26

27       Because Plaintiffs' claims are time-barred by § 340.6 of the California Code of Civil

28  Procedure, and because the factual allegations are insufficient to support the existence of an

1 | ERISA-defined fiduciary relationship as required for Claim One, Defendants' Motion to Dismiss
2 | Plaintiff's First and Second Claims for Relief is GRANTED without leave to amend.  Plaintiffs'
3 | Complaint is the fourth version to come before the Court, and the Court is satisfied that its
4 | deficiencies could not possibly be cured by further amendment.  *See Jackson v. Carey*, 353 F.3d
5 | 750, 758 (9th Cir. 2003) (*citing Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v.*
6 | *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th
7 | Cir. 1991).
8 | IT IS SO ORDERED.
9 | DATED: September 15, 2008
10
11 | Andrew J. Guilford
12 | United States District Judge

11